Craig CRANDALL, Plaintiff,

v.

STARBUCKS CORPORATION, Defendant.

Case No.15–cv–01828–JSC

United States District Court, N.D. California.

Signed 04/05/2017

Zachary Manning Best, Tanya Eugene Moore, Mission Law Firm, A.P.C., San Jose, CA, for Plaintiff.

Shane Singh, Ashley Nicole Arnett, Lewis Brisbois Bisgaard & Smith LLP, Sacramento, CA, for Defendant.

## ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT

JACQUELINE SCOTT CORLEY, United States Magistrate Judge

Plaintiff Craig Crandall, an individual who requires a wheelchair for mobility, sues for disability discrimination in connection with access barriers he encountered when visiting a Starbucks cafe in San Jose, California. In his First Amended Complaint ("FAC"), Plaintiff alleges that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), the Unruh Act, and the California Health and Safety Code. (Dkt. No. 37.[1]) Now pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 64, 65.) Having considered the parties' submissions, and having had the benefit of oral argument on March 23, 2017, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion and DENIES IN PART and GRANTS IN PART Defendant's motion.

## BACKGROUND

### I. Summary Judgment Evidence

Plaintiff became a paraplegic due to injuries from a traffic accident and, as a result, is unable to walk and uses a manual wheelchair for mobility. (Dkt. No. 64–1 ¶ 2; Dkt. No. 64–10 ¶ 1.) He has lived in the San Jose area since 2000. (See Dkt. No. 68–3.) Defendant operates Starbucks No. 5262 (the "Starbucks"), a public accommodation located at 6471 Almaden Expressway, Suite 90, in San Jose. (Dkt. No. 64–10 ¶¶ 2, 4.) The Starbucks opened in May 1996. (Dkt. No. 66–7 at 2–3.) On January 17, 2015, Plaintiff visited the Starbucks for the first time to buy coffee. (Dkt. No. 64–1 ¶ 5; Dkt. No. 66–2 at 11.) While he was able to buy a coffee on that visit (Dkt. No. 64–1 ¶ 5; Dkt. No. 62–4 at 4), he alleges that he experienced two access barriers that denied him full and fair enjoyment of the Starbucks.

The first access barrier Plaintiff alleged in the FAC was difficulty reaching the

---

1. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

transaction counter. (Dkt. No. 37 ¶ 10.) First, there were merchandise displays in the middle of the store floor that divided the floor space in two and created traffic-flow problems, which is often very busy and full of customers. (*See* Dkt. No. 64–10 at 86.) At his deposition, Plaintiff testified that it "was difficult for people to get past [him]" because of the displays. (Dkt. No. 66–2 at 10.) He avers that he had difficulty getting around "because merchandise and displays were placed in the center of the store such that they created a bottleneck for all of the customers who were waiting to order and pick up their drinks[,]" which meant that "[t]he path through the store was not wide enough for [him] to get through in [his] wheelchair without asking people to move." (Dkt. No. 64–1 ¶ 5.) There was also merchandise displayed at the transaction counter that blocked access to the cashier. (*See* Dkt. No. 66–2 at 10; Dkt. No. 64–1 ¶ 6.) The combined effect of these two displays made it difficult for Plaintiff to reach the counter. (Dkt. No. 66–2 at 13 ("The baskets in the center of the store and the point-of-sale displays made it for [sic] a very tight fit, especially with other people walking around.").) Plaintiff estimates that the path of travel to the merchandise counter was less than 27 inches wide. (Dkt. No. 70–1 ¶ 5.)

Private investigator Brian Ferris visited the Starbucks on March 31 and April 7, 2015. (Dkt. No. 645.) The merchandise display was still in the center of the store on those visits. (*Id.* ¶ 7.) Based on measurements and photographs he took, and his own observations—discussed in further detail below in the context of each barrier alleged—Mr. Ferris concluded that the path of travel to the cashier was limited to 20 or 25 inches when customers were present in the store and the path of travel on the other side of the merchandise display was equally limited. (*Id.*; *see also* Dkt. Nos. 64–6 at 6, 10, 12.) Sometime after

Plaintiff filed suit, the merchandise display was moved from the middle of the open floor space to a location against the wall across from the cashier's counter. (Dkt. No. 64–10 at 6.)

The second access barrier Plaintiff alleges that he experienced was a barrier in the path of travel to the men's restroom. (Dkt. No. 37 ¶ 10.) Plaintiff avers that he "was unable to locate an accessible route of travel to the restroom" because his "route was blocked by tables and chairs being used by other patrons," and the space in between the tables and chairs and the drink pick-up counter "was not wide enough for [his] wheelchair to fit through." (Dkt. No. 64–1 ¶ 7.) Specifically, one of the three chairs for the table adjacent to the drink pick-up counter obstructed the path and Plaintiff had to ask the patrons sitting at the particular table to stand and move a chair to permit him to pass. (Dkt. No. 66–2 at 14–15.) Plaintiff recalls that "the space between the table/chairs and the nearby pick-up counter was no more than two feet wide, and thus not wide enough for [his] wheelchair to get through." (Dkt. No. 64–1 ¶ 7.) Plaintiff estimates that the path of travel to the men's bathroom was *no more than 24 inches wide.* (Dkt. No. 70–1 ¶ 7.) Mr. Ferris avers that the path of travel to the restroom—namely, the space between the pick-up counter and the tables and chairs—was limited to 26 to 29 inches when there were no customers waiting for drinks and even less or no space when customers were present. (Dkt. No. 64–5 ¶ 8; Dkt. No. 64–6 at 14, 16–17, 19, 21.)

The table adjacent to the pick-up counter was removed sometime after Plaintiff filed suit. (Dkt. No. 64–10 at 6; Dkt. No. 66–4 at 5.) One Starbucks employee testified that it was removed because it was broken, but Starbucks Facilities Manager Chelsea Austin testified that she asked the store to remove it because it was creating

a bottleneck of customers. (Dkt. No. 64–10 at 8; Dkt. No. 66–5 at 3.) As of September 30, 2016, the high-top tables on the path to the men's restroom have only two chairs at each table, not three as Plaintiff experienced. (Dkt. No. 65–1 at 15; Dkt. No. 67 ¶ 11.) Ms. Austin notes that there is no set policy about permitting customers to move furniture inside of the stores, but Starbucks customers often move tables and chairs around. (Dkt. No. 66–3 at 3; Dkt. No. 64–10 at 7.) Starbucks employees are trained to reposition chairs back where they were at the beginning of the day— i.e., to push the chairs back into the table so they do not block the path of travel— though they are not given any instruction about how much space to leave between the tables. (Dkt. No. 66–3 at 4–5; Dkt. No. 66–4 at 3–4; Dkt. No. 66–5 at 3; Dkt. No. 66–6 at 4.) They perform sweeps of the store every eight to ten minutes checking for, among other things, out of place furniture, but they only reposition furniture once customers are finished using it. (Dkt. No. 66–3 at 4; Dkt. No. 66–5 at 4.)

Plaintiff lives ten miles from the Starbucks and visits it "sometimes when [he] is in that area and feel[s] like having a coffee." (Dkt. No. 64–1 ¶ 10.) At his deposition, he stated that he had "possibly" been to the Starbucks more than five times, but the visit alleged in the FAC was his first visit and the last visit was six months before his deposition. (Dkt. No. 66–2 at 9, 11.) In his declaration, he avers that he has "been to this [Starbucks] location probably between five and ten times" but only remembers experiencing the access barriers twice. (Dkt. No. 64–10 ¶ 10; see also Dkt. No. 70–1 ¶ 10.) He further avers that he has returned to the Starbucks several times since the visit alleged in the complaint, including one time when he chose to stay in his car when his wife went to get his coffee because he remembered that the store was too difficult to navigate. (Dkt.

No. 64–10 ¶ 10; Dkt. No. 70–1 ¶ 10.) Plaintiff avers that the Starbucks is located about one mile from his family's church, where his children attend summer programs. (Dkt. No. 70–1 ¶ 11.) When Plaintiff drops his children off at the summer programs, he often needs to do work at a place with WiFi; he would like that to be the Starbucks. (Dkt. No. 70–1 ¶ 12.) In addition, the Starbucks is near a restaurant Plaintiff and his family like and frequent; Plaintiff does not like the coffee there and would like to buy coffee at Starbucks after lunch. (Dkt. No. 70–1 ¶ 13.) According to Plaintiff, he would return to the Starbucks if the barriers he encountered—and a number of other barriers identified by Plaintiff's expert—were removed. (Dkt. No. 64–1 ¶ 10; Dkt. No. 70–1 ¶¶ 10, 14.)

Defendant submits evidence that there are a number of other Starbucks locations closer to Plaintiff's home and that Plaintiff's original stated reason for visiting the Starbucks—proximity to his son's lacrosse games—is not credible because the team's website indicates that it did not play at a school near that location. (See Dkt. No. 65–1 at 18; Dkt. Nos. 68–1–68–10.)

The parties have each submitted reports prepared by experts in disability access. Plaintiff's expert, Michael Bluhm, opines that all of the conditions Plaintiffs allege in the FAC fail to meet the height, width, or other requirements of the 2010 ADA Accessibility Guidelines ("2010 ADAAG") control. (Dkt. No. 64–3.) Defendant's expert, Kim Blackseth, submitted a declaration and report in which he opines that the interior of the store does not have any access barriers. (Dkt. No. 67 ¶ 9; Dkt. No. 67–1.) The Court will address the substance of each barrier and the experts' opinions below.

## II. Procedural History

Plaintiff filed this action on April 23, 2015 against Starbucks and the owners of the property, contending that the barriers he encountered at the Starbucks prevented him from enjoying full and equal access to the store.[2] (Dkt. No. 1.)

Plaintiff dismissed the owners of the property from the action and filed the First Amended Complaint ("FAC") against Starbucks—as owners of the store—only. (Dkt. Nos. 26, 37.) In the FAC, in addition to alleging the two barriers Plaintiff experienced himself, he alleged a number of other violations based on his expert's inspection of the Starbucks relating to the entry door's threshold height, closing speed, and door pressure; the arrangement of interior accessible tables; elevated counter seating; inaccessible location of self-service items; unsecured floor mats; and a number of issues with the men's restroom. (Id. ¶ 11(a)-(p).)

The parties have each filed a motion for summary judgment seeking judgment in their favor on the FAC claims.[3] The gravamen of the dispute concerns the validity and potential mootness of Plaintiff's ADA claims. Plaintiff contends that there is no genuine dispute of fact that he experienced the access barriers alleged in the FAC and that their presence has deterred him from returning to the Starbucks. He argues that an injunction is necessary to ensure the barriers he and his experts identified are removed and do not return in the future and that judgment in his favor should follow on the state law claims. Defendant counters that Plaintiff lacks standing to bring ADA claims because he did not experience any access barriers, has failed to establish that he intends to return to the Starbucks, and that, in any event, his claims are moot because Starbucks has remedied any unlawful barriers that previously existed. Defendant also argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## DISCUSSION

### I. Evidentiary Requests & Objections

Before turning to the substance of the parties' motions, the Court must resolve a number of evidentiary disputes. Specifically, Defendant filed a request for judicial notice and both parties have objected to certain evidence.

#### A. Request for Judicial Notice

To support its argument that Plaintiff does not intend to return to the Starbucks, Defendant offers evidence that Plaintiff's son's lacrosse team did not play games near the Starbucks and that there are a number of other Starbucks locations closer to Plaintiff's house. (Dkt. No. 65-1 at 18.) The evidence includes (1) public record information regarding Plaintiff's purchase of his home; (2) Google maps showing routes from Plaintiff's home to the Starbucks, other Starbucks located near his home, and routes from his son's lacrosse team's fields to the Starbucks; and (3) game schedules and home field information from Plaintiff's son's lacrosse team—all of which are the subject of Defendant's Request for Judicial Notice. (Dkt. No. 68; Dkt. No. 68-1–68-10.)

First, with respect to the public record information of Plaintiff's home,

---

**2.** This matter was initially assigned to a different judge but was reassigned to this Court in June 2016. (Dkt. No. 41.)

**3.** Plaintiff now waives two claims alleged in the FAC, including the claim for knee clearance under the men's restroom lavatory, and the claim regarding the soap dispenser there. (Dkt. No. 64-10 ¶¶ 5-6.)

courts may take judicial notice of "matters of public record[.]" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted). Likewise, as to the maps, "[c]ourts have generally taken judicial notice of facts gleaned from internet mapping tools such as Google Maps or Mapquest." *United States v. Brown*, 636 F.Supp.2d 1116, 1124 n.1 (D. Nev. 2009) (collecting cases); *see, e.g., Carson v. Adams*, No. CV 09-9194-CAS (AGR), 2013 WL 169845, at *2 n.3 (C.D. Cal. Jan. 14, 2013) (citation omitted). Plaintiff does not object to these requests. The Court therefore GRANTS Defendant's requests for judicial notice as to these documents.

■ Plaintiff objects to the requests for judicial notice of information from Plaintiff's son's lacrosse team's website, contending that information about where the team played is not "generally known," its accuracy is reasonably questionable, there is "no way to authenticate the screen captures," and there is "no way to determine if what is on the website is an accurate reflection of what actually transpired or will transpire." (Dkt. No. 70 at 7–8.) "It is not uncommon for courts to take judicial notice of factual information found on the world wide web." *Barnes v. Marriott Hotel Servs., Inc.*, No. 15-cv-01409-HRL, 2017 WL 635474, at *4 (N.D. Cal. Feb. 16, 2017) (citations omitted). And indeed, Plaintiff never states that the information on the webpage is not accurate; he merely states that there is no way to determine if it is. While Plaintiff cites cases where courts have declined to take judicial notice of websites (Dkt. No. 70 at 8), the circumstances in those cases were different, the information on the website was crucial to the parties' claims, or the courts declined judicial notice with no little to no analysis. *See, e.g., In re Yagman*, 473 Fed.Appx. 800, 801 n.1 (9th Cir. 2012);*Bingham v. Holder*, 637 F.3d 1040, 1045 n.3 (9th Cir.

2011). Here, Plaintiff has not really challenged the authenticity of the websites or maintained that the information is inaccurate, and the websites are tangential to the issues, not central to Plaintiff's claims. Accordingly, the Court GRANTS Defendant's motion to take judicial notice of the lacrosse team websites. However, the Court notices the websites solely for the purpose of establishing that the team did not list the school next to the Starbucks as one of its home fields, not for the truth of the matter asserted—*i.e.*, not to show that the team never actually played there.

## B. Plaintiff's Evidentiary Objections

### 1. *Declaration of Kim Blackseth*

Plaintiff objects to the declaration of Defendant's expert, Kim Blackseth, because (1) portions must be excluded under the "sham affidavit" rule; (2) portions contain impermissible legal opinion and legal conclusions; and (3) he "may have relied upon information provided to him by one of his associates which is not the practice of experts within his field." (Dkt. No. 70 at 11–14.)

#### a. Sham Affidavit Rule

■ The "sham affidavit" rule provides that a "party cannot create an issue of fact by an affidavit contradicting ... prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotation marks and citation omitted). To apply the rule, the court must "make a factual determination that the contradiction [is] actually a sham" and conclude that the inconsistency is "clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577 F.3d at 989, 998 (9th Cir. 2009). A declaration that "elaborates upon, explains, or clarifies prior testimony" does not trigger exclusion. *Id.* (citation omitted).

■ Plaintiff identifies eight instances that he argues must be excluded under the

sham affidavit rule because Mr. Blackseth's declaration conflicts with his expert report and earlier deposition testimony even though his declaration states that the opinions therein are based on his September 30, 2016 visit to the store and his expert report. (Dkt. No. 67 ¶¶ 2, 9.) First, in his declaration Mr. Blackseth states that the "metal threshold at the entry/exit doors is no more than 1/2[ inch] beveled and complies with all accessibility requirements." (Dkt. No. 67 ¶ 9(E).) Mr. Blackseth's expert report is inconsistent in that there he agreed with Plaintiff's expert that the entrance threshold was 1/4 inch higher than the 2010 ADAAG requirements and he further noted that Starbucks would fix the issue. (Dkt. No. 67–1 at 3.) Likewise, at his deposition he testified that the threshold exceeded the maximum height and that he had recommended it be repaired, but he did not know if it had been repaired yet. (Dkt. No. 70–10 at 13–14.) In his declaration Mr. Blackseth does not explain why he changed his conclusion—by, for example, stating that he has since visited the Starbucks and has changed his opinion based on renovations to the store—or explain how he is somehow clarifying the statement in his expert report or previous deposition testimony. Although Defendant argues that Mr. Blackseth's declaration is "based on observations that were current through the date of the declaration—February 2, 2017" (Dkt. No. 72 at 9 (citing Dkt. No. 67)), the Blackseth Declaration nowhere states as much; instead, the Declaration represents that it is based on his earlier expert report. Defendant likewise maintained at oral argument that the re-

vised Blackseth Declaration was based on a subsequent expert inspection, but was unable to identify any evidence in the record to support that statement.[4] The Court therefore sustains the objection to paragraph 9(E) of the Blackseth Declaration.

The same result is required for six of the other statements in the Blackseth Declaration to which Plaintiff objects. In each these instances, in his expert report and deposition Mr. Blackseth agreed with Plaintiff's expert that the feature—door pressure, elevated counter seating, and the location of the mirror, toilet paper dispenser, and toilet—failed to comply with the 2010 ADAAG. But in his summary judgment declaration he avers that each complies without indicating that Defendant conducted remediation and subsequent to that he visited the Starbucks again, took new measurements, and thus changed his conclusions. The Court therefore sustains Plaintiff's objections to paragraphs 9(F), (I), (L), (P), (Q), and (O) of the Blackseth Declaration.

■ The Court overrules the objection as to Mr. Blackseth's comments about the location of the trashcan in the men's bathroom. (*See* Dkt. No. 70 at 12–13.) In his expert report, Mr. Blackseth stated that the trashcan was no longer obstructing the entry door because it had been relocated so "[t]here is no barrier or action required." (Dkt. No. 67–1 at 8.) At his deposition, he testified that the trashcan had been moved from the place where Plaintiff encountered it and that even if it blocked access to other elements—like the sink or the toilet—it is not a barrier because it is

---

4. Defendant suggested at oral argument that the Austin Declaration indicates that Mr. Blackseth's declaration was based on conditions observed at a subsequent expert inspection following remediation efforts. In Defendant's view, because Ms. Austin speaks to her knowledge of the conditions at Starbucks as

of February 2017, the implication must be that remediation was done. While that may be one inference to be drawn from her testimony, it is not the only one; another is that there are genuine factual disputes about the conditions at the Starbucks.

easily moveable. (Dkt. No. 64–10 at 20–21.) This does not conflict with his Declaration statement that, notwithstanding the trashcan, the bathroom has enough clear floor space to comply with regulations. (Dkt. No. 67 ¶ 9(M).) The Court therefore overrules Plaintiff's objection to that paragraph.

b. Legal Opinion or Legal Conclusions

Plaintiff next objects to four particular paragraphs of the Blackseth Declaration and the conclusions of all subparagraphs on the grounds that they contain impermissible legal opinion or legal conclusions. (Dkt. No. 70 at 13.)

■ Although an expert may not provide testimony on an ultimate legal issue, he may testify as to findings that support the ultimate issue. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004). "Further, an expert may refer to the law in expressing an opinion without crossing the line into a legal conclusion." *Kalani v. Starbucks Corp.*, 81 F.Supp.3d 876, 882 (N.D. Cal. 2015) (citation omitted). But mere "legal conclusions without underlying factual support ... constitute 'unsupported speculation' and are therefore inadmissible." *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 Fed.Appx. 719, 720 (9th Cir. 2010) (citation omitted).

Plaintiff objects to the following statements:

B) The subject store fully complies with all federal and state access regulations as Plaintiff Craig Crandall alleges them and as they relate to his disability of a mobility-impaired person who uses a manual wheelchair.

G) The arrangement of the interior tables and chairs provide an equivalent experience and comply with all access regulations.

K) The floor mats are properly installed and secured and comply with all access regulations.

M) The men's restroom has clear floor space of 60' wide by 51' deep and is not obstructed by the trash can. Therefore, the clear space in the men's restroom complies with all access regulations.

(Dkt. No. 67 ¶¶ 9(B), (G), (K), (M).)

■ The Court sustains Plaintiff's objections to paragraphs 9(B), (G), and (K). Conclusory opinions that the entire facility or particular features fully comply with regulations and access requirements constitute improper legal conclusions. *See, e.g., Hangarter*, 373 F.3d at 1016–17; *Kalani*, 81 F.Supp.3d at 882 ("Conclusory opinions that the 'facility is free of non-compliant issues,' or that particular features, e.g., the accessible parking or point of sale, 'compl[y] with all applicable access requirements,' constitute improper legal conclusions.") (citations omitted); *Sharp v. Islands Cal. Ariz. LP*, 900 F.Supp.2d 1101, 1112 (S.D. Cal. 2012) (statement that the "waiting area is accessible to wheelchair users and complies with all ADAAG requirements" constituted improper legal conclusions). The statements in paragraphs 9(B), (G), and (K) do not identify any factual support for Mr. Blackseth's opinions. The Court therefore finds that these paragraphs are impermissible legal conclusions without factual support and are therefore inadmissible. *See Plush Lounge*, 371 Fed.Appx. at 720. In contrast, paragraph 9(M) provides factual support for his conclusion and therefore the Court overrules the objection to that paragraph. *See Kalani*, 81 F.Supp.3d at 882–83.

Plaintiff also objects to "the portion of every other subparagraph in paragraph 9 that concludes with a legal opinion." (Dkt. No. 70 at 13.) But the case on which he relies, *Kalani v. Starbucks Corp.*, 81 F.Supp.3d 876 (N.D. Cal. 2015)—in which

the court entertained the plaintiff's objections to portions of an expert declaration from the same expert witness, Mr. Blackseth—does not support this objection. In *Kalani*, the court sustained the plaintiff's objections to portions of Mr. Blackseth's opinion that—like paragraphs 9(B), (G), and (K) here—included legal conclusions alone without any factual support. *Id.* at 882–83. But the *Kalani* court noted that the plaintiff "properly d[id] not object" to another paragraph in which Mr. Blackseth opined that "[t]he pick-up counter ... as modified now provides a length of 36 inches and a height of 34 inches, as such it complies with access regulations" because that paragraph provided factual support for the conclusion. *Id.* at 882 (record citation omitted). So too here with the remaining subparagraphs in paragraph 9 of Mr. Blackseth's declaration.

█ Third, Plaintiff objects to the Blackseth Declaration on the grounds that he "may have relied upon information provided to him by an associate which is not the practice of experts within his field." (Dkt. No. 70 at 13.) Specifically, Plaintiff laments that Mr. Blackseth did not take the photographs and measurements of the Starbucks himself and instead relied on his associates for such information; Plaintiff argues that, as a result, the Blackseth Declaration lacks foundation and constitutes hearsay. (*Id.* at 13–14.) Plaintiff's expert testified that reliance on others' photographs and measurements is not the practice in the disability access field; based on that, Plaintiff argues that Mr. Blackseth's declaration is also improper expert opinion. (Dkt. No. 70 at 14; Dkt. No. 70-3 ¶ 33.) Defendant responds that Mr. Blackseth has long relied on photographs and measurements of other certi-

fied disability access specialists in his firm because he is a quadriplegic. (*See* Dkt. No.72 at 10; Dkt. No. 72-3 at 3.[5]) Ironically, Plaintiff's objection undermines Plaintiff's own expert, who based his opinions about the width of the store when the merchandise displays were in the center on photographs that Plaintiff's counsel provided. (*See* Dkt. No. 64-3 ¶ 24.) At bottom, given that the measurements and photographs were taken by other certified specialists in Mr. Blackseth's practice, the Court overrules Plaintiff's objection. Plaintiff is free to seek to undermine the strength of Mr. Blackseth's opinion through cross-examination.

The cases Plaintiff cites do not change the Court's conclusion. For example, *Chapman v. Starbucks Corp.*, No. 2:09-cv-2526-GEB-EFB, 2011 WL 66823, at *5, 2011 U.S. Dist. LEXIS 3570, at *12–13 (E.D. Cal. Jan. 7, 2011), involved the plaintiff's objection to Mr. Blackseth's expert declaration on the grounds that his report was based entirely on pictures the defendant had provided to him. The court overruled the objection, noting that the plaintiff had failed to establish that Mr. Blackseth's use of the photographs was not the type of evidence reasonably relied upon by experts in the disability access field given that Mr. Blackseth conducted an inspection himself and therefore had personal knowledge of the store conditions. *Id.* at *5, 2011 U.S. Dist. LEXIS 3570, at *13.

### 2. *Chelsea Austin Testimony*

█ Plaintiff also objects to the testimony of Starbucks Facilities Manager Chelsea Austin, first on the grounds that it is improper lay opinion. (Dkt. No. 70 at 9.) Presumably, here, Plaintiff refers to paragraph 6, where Ms. Austin states that

---

**5.** Although Defendant submitted this portion of the Blackseth deposition transcript for the first time with its reply, the Court considers it

as Plaintiff has not objected to its consideration.

she has personal knowledge about the Starbucks to give measurements about eight different aspects of the store—for example, stating that the threshold of the entry door is no more than 1/2 inch high and the door has an operating pressure of no more than five pounds, there is no elevated counter seating, and the men's restroom mirror is no more than 40 inches high—and to paragraphs 7 through 9, where she states that three images in Defendant's motion are true and correct images of certain features within the Starbucks. (Dkt. No. 65–2 ¶ 6.) In Plaintiff's view, the Court should exclude these statements because Defendant has "tacitly acknowledg[ed]" that testimony about such measurements requires an expert, since Defendant submitted the same information in Mr. Blackseth's declaration. (Dkt. No. 70 at 9.) But lay witnesses can testify about the height of a fixture or the threshold of a door. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) ("It's commonly understood that lay witnesses may estimate size, weight, distance, speed and time even when those quantities could be measured precisely.") (citations omitted). Although Ms. Austin's vague statement that she has personal knowledge of the Starbucks generally would not, on its own, be enough foundation for her to testify to the measurements, she states that she is the facilities manager for the store responsible for accessibility issues or complaints, which demonstrates her familiarity with the access-related store elements. (*See generally* Dkt. No. 65–2.) Indeed, she testified that she is familiar with the layout and other accessibility-related aspects of the Starbucks. For the same reason, she also has averred enough information to demonstrate personal knowledge that the photographs included in the motion accurately depict the store. Accordingly, the Court overrules Plaintiff's objections to para-

graphs 6 through 9 of the Austin Declaration with the exception of subparagraph 6(g), which appears to state a legal conclusion. (*See* Dkt. No. 69–2 ¶ 6(g) ("The plumbing beneath the men's restroom is fully insulated.").)

However, in paragraph 10, Ms. Austin avers that based on Starbucks's policy of striving to make its locations accessible to persons that are disabled, "the subject store provides more than adequate and lawful access to Plaintiff Craig Crandall" and "never intentionally discriminated against [Plaintiff]." (Dkt. No. 65–2 ¶ 10.) To the extent that Plaintiff also objected to this paragraph, the Court sustains the objection or *sua sponte* sustains its own objection to this paragraph as it contains impermissible legal opinion or legal conclusions.

### C. Defendant's Evidentiary Objections

#### 1. *Objections to Evidence Submitted in Support of Plaintiff's Motion*

Defendant objects to one paragraph of Plaintiff's declaration as well as the declarations of Plaintiff's two private investigators, all submitted in support of Plaintiff's opening summary judgment brief. (Dkt. No. 69–1.) Plaintiff urges the Court to disregard or overrule Defendant's evidentiary objections because they were filed separately from Defendant's opposition brief in contravention of Civil Local Rule 7–3(a). (Dkt. No. 71 at 6.) *See* N.D. Cal. Civ. L.R. 7–3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). The essence of Plaintiff's opposition is that, by ignoring Rule 7–3(a), Defendant fit more argument into its brief than it otherwise could have—and more than Plaintiff did, because his objections were properly within his brief. (*See* Dkt. No. 71 at 6.) The Court agrees and over-

rules Defendant's objections.[6] The Court reminds defense counsel of its obligation to know and follow the Court's Local Rules. *See* Civ. L.R. 11–4(a)(2), 11–4(a)(4).

▮ Defendant also objects to evidence that Plaintiff submitted in support of his reply, contending that "[i]t is improper for Plaintiff to submit any evidence in his Reply that was not initially submitted in his motion." (Dkt. No. 73.) But Local Rule 7–3(c) permits a party to attach a declaration or affidavit to a reply. On the other hand, courts typically do not consider new evidence first submitted in a reply brief because the opposing party has no opportunity to respond to it. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (citation omitted) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."); *see, e.g., BoomerangIt, Inc. v. ID Armor, Inc.*, No. 5:12-CV-0920 EJD, 2012 WL 2368466, at *4 n.1 (N.D. Cal. June 2012) (citation omitted).

▮ Here, Plaintiff's reply includes some evidence that is new—*i.e.*, that he did not include in his opening brief or his opposition to Defendant's motion, including: a portion of Ms. Austin's deposition testimony (Dkt. No. 71–2 at 15–22); portions of the depositions of Starbucks employees Cher Hubert (*id.* at 15–22), Kelly

Schaub (*id.* at 24–27), Micaela Wandrocke (*id.* at 29–35), and Samantha Jordan (*id.* at 37–46); and a supplemental declaration of Plaintiff's private investigator Nick Quinn describing his observation that Starbucks employees did not conduct eight minute "spins" of the store (Dkt. No. 71–3). The Court sustains Defendant's objection to this evidence and will not consider it. However, Plaintiff has also submitted a portion of his own deposition that he included in his opposition to Defendant's summary judgment motion. (*Compare* Dkt. No. 71–2 at 6–14, *with* Dkt. No. 70–10 at 28–35.) The Court overrules Defendant's objection to this deposition testimony.

## II. Analysis

### A. ADA Claims

▮ Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Among its many provisions, Title III "prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). To prevail on a Title III discrimination claim, a plaintiff must show that (1) he is disabled with-

---

**6.** In any event, the Court would reach the same conclusion if it considered the substance of Defendant's objections. Defendant asks the Court to exclude Plaintiff's statement that he has visited the Starbucks five to ten times and encountered the barriers twice under the sham affidavit rule. (Dkt. No. 69–1.) This does not flatly conflict with Plaintiff's deposition testimony, which was that he had possibly been there more than five times, and specifically recalled visiting twice: once on January 17, 2015—as alleged in the FAC—and on another visit when he had his wife enter the store alone because he recalled that it was too difficult to access. (Dkt. No. 66–2 at 9, 11.) Accordingly, the sham affidavit rule does not apply. *See Van Asdale*, 577 F.3d at 998. As to the inspectors' testimony, Defendant does not cite any legal authority that supports its position that testimony regarding unnoticed site visits must be excluded. (Dkt. No. 69–1.) Further, there is no dispute that the parties conducted a joint site inspection of Starbucks in August 2015 pursuant to the Court's order. (*See* Dkt. No. 28.)

in the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied full and equal treatment by the defendant because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Here, the first two elements are undisputed: the parties agree that Plaintiff is disabled and that Defendant owns the Starbucks he visited. At issue is only whether Plaintiff was denied full and equal treatment by Defendant because of his disability—*i.e.*, whether he was discriminated against. This element is met if there was a violation of applicable accessibility standards. *See Chapman v. Pier 1 Imports (U.S.) Inc. (Chapman I )*, 631 F.3d 939, 945 (9th Cir. 2011) (citation omitted). The parties agree that the 2010 ADAAG control. (Dkt. No. 64–10 ¶ 3.) Thus, Plaintiff can establish that he was discriminated against by demonstrating that aspects of the Starbucks failed to comply with the 2010 ADAAG and thus constituted access barriers.[7]

Plaintiff argues that he is entitled to summary judgment because the evidence establishes as a matter of law that the Starbucks has architectural barriers relating to his disability that violate the ADA. Defendant contends that Plaintiff cannot demonstrate that he experienced any access barriers that hindered his full and equal enjoyment of the Starbucks and, even if he did, Defendant's renovations to the Starbucks store have brought all of Plaintiff's identified barriers into compliance with the 2010 ADAAG. Put another way, the focus of Defendant's motion is

that Plaintiff lacks standing and, in any event, his ADA claims are moot.

### 1. *Plaintiff Has Suffered an Injury in Fact Sufficient for Standing*

Defendant first contends that Plaintiff has not suffered any injury in fact and therefore lacks standing because (1) he has not adequately established that any of the barriers identified denied him full or equal access, and, (2) even if he had, he has not established an intent to return.

 To demonstrate an injury in fact, an ADA claimant must establish that he has been injured as a result of the defendant's actions and that the injury can be redressed by a favorable decision. *Chapman I*, 631 F.3d at 946. As injunctive relief is the only relief available to private plaintiffs under the ADA (aside from attorneys' fees), to prove redressability an ADA plaintiff must also "demonstrate a 'real and immediate threat of repeated injury' in the future." *Id.* (citation omitted). A plaintiff can show likelihood of future injury by demonstrating an intent to return to a noncompliant accommodation or that he was deterred from visiting a noncompliant accommodation because he encountered barriers related to his disability there. *Id.* at 948–50.

 The record reflects that Plaintiff suffered an injury in fact because he personally encountered two barriers: he had difficulty reaching the cashier's counter because of the merchandise displays in the middle of the store and at the counter, and he had difficulty passing through the path of travel to the men's bathroom because of the furniture blocking the aisle next to the pick-up counter. Plaintiff averred that

---

**7.** Barriers must be removed where it is "readily achievable" to do so, which means removal is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §§ 12181(9), 12182(b)(2)(A)(iv). There appears to be no dispute that removal of all identified barriers is readily achievable; indeed, Starbucks impliedly contends that it has, in fact, remedied all or most of them.

when he visited the Starbucks the pathway to the counter and the men's bathroom were both less than 36 inches. As to the bathroom path, Plaintiff testified that he had to ask other patrons to move their chairs in order to pass through. Plaintiff's photographs corroborate his testimony. This is enough evidence to support a finding that he encountered barriers to access at the cafe. While part of the problem Plaintiff encountered passing through the area was the heavy flow of customer traffic, the evidence reflects that the patrons' path was bottlenecked because of the merchandise displays or furniture that had narrowed the paths in the first place. Thus, Defendant's attempt to reframe the issue as one pertaining to harm to the other customers—i.e., able-bodied customers' difficulty getting around Plaintiff—does not undermine that evidence. Given Plaintiff's testimony that the walkways were less than 36 inches wide, Plaintiff has suffered an injury-in-fact sufficient to confer standing.

■ Defendant also argues that there was no ADA violation because Plaintiff testified that he reached the transaction counter and was able to buy a coffee. This argument ignores the law on harm in access barrier cases: the ADA does not require a plaintiff to have been denied access altogether; all it requires is that a plaintiff be denied full and equal access. Thus, Plaintiff does not lack standing merely because he was able to buy a coffee.

■ Defendant also contends that Plaintiff lacks standing because he only experienced the access barriers alleged on one occasion. Defendant relies on *Chapman v. Pier 1 Imports (U.S.) Inc. (Chapman I)*, 631 F.3d 939, 949 (9th Cir. 2011), which it reads to imply that only double-digit numbers of visits to a place of public accommodation are enough to establish standing. (*See* Dkt. No. 65–1 at 10–11.) Not so. "Allegations that a plaintiff has visited a public accommodation on *a prior occasion* and is currently deterred from visiting that accommodation by accessibility barriers" are enough to establish standing. *See Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008) (emphasis added); *see also, e.g., Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1008 (C.D. Cal. 2014) (allegations that a plaintiff was twice deterred from visiting a store and continues to be deterred from visiting the store is enough to establish standing to sue for injunctive relief under the ADA).

■ Plaintiff has also established intent to return sufficient to establish a likelihood of future injury. In determining whether a plaintiff's likelihood of return is sufficient to confer standing, courts have examined factors including: (1) the proximity of the business to the plaintiff's residence, (2) the plaintiff's past patronage of the business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant.[8] *See Lema v. Courtyard Marriott Merced*, No. CIV–S–00–1496, DFL PAN, 2012 WL 1038108, at *4 (E.D. Cal. Mar. 27, 2012) (citation omitted). Here, the Starbucks is less than 10 miles from Plaintiff's home in his hometown, and Plaintiff testified that he wishes to return to the Starbucks once the access barriers have been

---

8. Reviewing one district court decision that concluded the plaintiff lacked standing based on a review of those factors, the Ninth Circuit suggested that a plaintiff need not meet them to establish standing sufficient to survive a facial attack on standing in a motion to dismiss. *See Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam) (noting that the minimal allegations that a plaintiff visited a facility and intends to return is sufficient on a motion to dismiss). The Court presumes the factors are still relevant to a factual attack on standing at the summary judgment stage.

removed. Further, he explained that he would return to the Starbucks when he drops his children off at summer programs at his family's church just one mile away and after eating at a nearby restaurant his family likes to frequent. These facts are sufficient to establish intent to return. *See Doran*, 524 F.3d at 1041; *see also Acosta v. Fast N Esy II, Inc.*, No. 1:16-cv-01150-LJO-SAB, 2016 WL 6666830, at *3 (E.D. Cal. Nov. 10, 2016) (on a motion to dismiss, noting that a distance of 15 miles between the plaintiff's home and the store at issue was "not so far as to undercut Plaintiff's allegation that he lives 'near' the Facility nor does this distance render it implausible that Plaintiff would return to the Facility"); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 119 (C.D. Cal. 2008) (on a motion to dismiss, noting that the plaintiffs lived in reasonable proximity to the store when they lived 15 to 60 miles away).

■■■ And in any event, a Title III ADA plaintiff need not establish intent to return to have standing. "Demonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Chapman I*, 631 F.3d at 949 (emphasis added); *see also Doran*, 524 F.3d at 1042 n.5 ("Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, so he possesses standing under Article III...."); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) ("We hold that a disabled individual who is cur-

rently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'"); *see, e.g., Kohler v. CJP, Ltd.*, 818 F.Supp.2d 1169, 1173–74 (C.D. Cal. 2011) (noting that the plaintiff need not allege intent to return to have standing) (citations omitted).

Although Defendant dedicates many pages of its brief to undermining Plaintiff's recollection of why he was at the Starbucks—that is, demonstrating that Plaintiff's son's lacrosse team does not actually play near the Starbucks—this evidence does not defeat Plaintiff's standing. It is undisputed that Plaintiff visited the Starbucks on at least two occasions, and that it is only 10 miles from his house. Given the proximity, it matters little precisely *why* Plaintiff visited the Starbucks. Likewise, Defendant emphasizes that there are a number of other Starbucks stores closer to Plaintiff's residence. But Defendant cites no authority that supports its position that the ADA only protects public accommodations closest to a disabled individual's home, and the Court's review indicates that the ADA's reach is not so limited. *See, e.g., Doran*, 524 F.3d at 1038, 1041 (noting that a plaintiff has standing to sue to challenge access barriers in a 7–Eleven store about 550 miles from his home).

Thus, Plaintiff has suffered an injury-in-fact and intent to return sufficient to establish standing to bring his ADA claims. Defendant also argues that because it has removed or remediated all barriers in the Starbucks, Plaintiff's claim for injunctive relief is moot. As mootness requires a fact-specific inquiry, the Court will address mootness with respect to each alleged access barrier separately.

3. *Whether Starbucks Has Access Barriers*

■■■ Plaintiff moves for summary judgment on the grounds that he is enti-

tled to injunctive relief regarding a number of alleged barriers: the two barriers he personally encountered at the Starbucks—*i.e.*, access to the counter area and access to the men's restroom—and a number of additional barriers alleged in the FAC that his expert witness, Mr. Blume, later identified. To be entitled to an injunction, a plaintiff must show that the defendant has violated the ADAAG. *See Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011) (citations omitted). A Title III ADA plaintiff is not required to show other prerequisites generally required for injunctive relief, as "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir. 2010). As a general rule, "[t]he ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman v. Pier 1 Imports (U.S.) Inc. (Chapman II )*, 779 F.3d 1001, 1005 (9th Cir. 2015) (quotation marks and citation omitted).

■■■■ As discussed above, Defendant contends that all of the alleged access barriers are moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (internal quotation marks and

citations omitted). "Thus, the central inquiry is any mootness challenge is whether changes in the circumstances existing when the action was filed have forestalled any meaningful relief." *Moeller*, 816 F.Supp.2d at 860. "[T]he question is not whether the precise relief sought at the time an application for injunctive relief was filed is still available. The question is whether there can be any effective relief." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000). "So long as the court can grant some effective relief, it does not matter that the relief originally sought is unavailable due to changed circumstances." *Moeller*, 816 F.Supp.2d at 860 (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).

■■■■ Defendant argues that by remediating the barriers at Starbucks it has voluntarily ceased the conduct Plaintiff challenged in the FAC. "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave [t]he defendant ... free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (internal quotation marks and citation omitted). Accordingly, voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992) (citation omitted).

■■■■ Put another way, a defendant's voluntary compliance only moots a request for prospective relief where the defendant meets the "formidable burden" or demonstrating that it is "absolutely clear the alleged wrongful behavior could not rea-

sonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Starbucks thus bears the "heavy burden of persuad[ing] the court" that each alleged barrier "cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693 (internal quotation marks and citation omitted).

### a. Access to the Counter Area

■ The first alleged barrier is the access to the cashier counter. (Dkt. No. 37 ¶ 10(a).) Plaintiff contends that Defendant violated the 2010 ADAAG requirement that the minimum clear width of all walking spaces be a minimum of 36 inches. (Dkt. No. 64 at 17.) *See* 2010 ADAAG 403.5.1; 28 C.F.R. pt. 36, subpart D, 36 C.F.R. pt. 1191 app. B & D.[9] The gravamen of his claim is that his access to the counter was impeded because the merchandise display in the middle of the store made the aisle too narrow for him to navigate when there are other customers present and because other merchandise displays at the counter itself blocked his access.

Plaintiff testified that the aisle was less than 36 inches wide based on his experience operating his manual wheelchair. And a Plaintiff's own opinion about the measurements is admissible. *See Strong*, 724 F.3d at 1046. Mr. Ferris testified, and his pictures indicate, that when the merchandise display is in the center of the clear space and customers are present, the aisle through the store is as narrow as 20 inches. (Dkt. No. 64–5 ¶ 7.) Reviewing those pictures, Plaintiff's expert, Mr. Blume, concluded that the path of travel was as narrow as 18 to 30 inches. (Dkt. No.

64–3 ¶ 24.) He opined that there would have been a compliant path of travel to the cashier's counter if the merchandise display had not been placed in the middle of the waiting area, and noted that the merchandise display was no longer in the center of the clear space when he visited the store. (*Id.* ¶ 24.)

Even once he got to the counter, Plaintiff further alleges that additional merchandise displays further blocked his reach to the cashier. The 2010 ADAAG requires accessible clear space on the counter be at least 36 inches wide and that the accessible portion of the counter top extend the same depth as the sales or service counter top. 2010 ADAAG §§ 904.4.1, 904.4. Plaintiff avers that the counter was cluttered with merchandise that it was difficult for him to reach the over and pay for his coffee. (Dkt. No. 64–1 ¶ 6.) In August 2015 Plaintiff's expert, Mr. Blume, measured the clear space at the transaction counter as less than 30 inches due to merchandise displayed in front of and in between the cash registers. (Dkt. No. 64–3 ¶ 11; Dkt. No. 64–4 at 19–20.)

In rebutting Plaintiff's motion and seeking summary judgment in its favor, Defendant relies on the testimony of Mr. Blackseth and Ms. Austin. Mr. Blackseth opined that there were no problems with the width of the clear spaces within the store. (Dkt. No. 64–10 at 39; Dkt. No. 67 ¶ 9(D).) At the time he wrote his expert report, it is undisputed that Defendant had removed the merchandise display from the center of the waiting area and relocated it against the wall—according to Defendant's Facilities Manager because it did not provide enough clearance. (Dkt. No. 64–3 ¶¶ 24–25; Dkt. No. 63–10 at 6.) But Mr. Blackseth

9. Available at https://www.ada.gov/regs2010/ 2010ADAStandards/2010ADAStandards_prt. pdf (last visited Mar. 6, 2017).

does not specifically note that in his report, instead contending generally that there were no issues with the clear space within the store. (Dkt. No. 64–10 at 39.) Mr. Blackseth also opined in his expert report and his declaration that there was no violation regarding the service counter because it measured 33 inches high and the clear space was over 36 inches wide. (Dkt. No. 64–10 at 33; Dkt. No. 67 ¶ 9(C).)

Ms. Austin similarly avers that as of February 2017 the Starbucks "has no less than 36 [inches] clearance space for the path of travel from the entry door, to the customer service area. . . ." (Dkt. No. 69–2 ¶ 6(b).) She further avers that the store's transaction counter provides the requisite counter and floor space inasmuch as it is 33 inches high and at least 36 inches wide and is not obstructed by any merchandise displays. (Dkt. No. 69–2 ¶ 6(a).) Mr. Blackseth's and Ms. Austin's testimony does not create a genuine dispute of fact as to whether access to the cashier counter was obstructed at the time of Plaintiff's visit. The only record evidence from *before* the merchandise displays were moved is that there was not a wide enough pathway to the counter or enough access to the counter itself; that is, that at the time of Plaintiff's visit Defendant was in violation of the ADA.

And Defendant has not established that the access to the cashier counter barrier has been removed or remediated such that Plaintiff's claim is moot. While the testimony of Ms. Austin and Mr. Blackseth suggests that the counter is not currently obstructed—and Plaintiff has not offered any testimony to the contrary—neither their testimony nor any other evidence establishes that the counter will not be obstructed again in the future. For example, drawing all inferences in Defendant's favor, the Court can reasonably infer that Starbucks relocated the merchandise dis-

plays; but this is not a structural or permanent architectural change. There is no evidence that Starbucks has ever had or has since adopted a particular policy governing placement of merchandise displays. Starbucks has not proven that the display will not be returned to the middle of the store or other areas where it might block Plaintiff's access to the cashier's counter. Thus, Starbucks has not met its "heavy burden" of persuading the Court that Plaintiff's access to the cashier counter might be impeded by merchandise displays in the future. *See Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693.

Relatedly, Defendant insists that Plaintiff is not entitled to summary judgment because the cashier counter access barrier Plaintiff encountered is temporary and moveable. ADA regulations "explain that the requirement that public accommodations maintain 'readily accessible' facilities and equipment 'does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 28 C.F.R. § 36.211(b). Thus, "an isolated or temporary hindrance to access does not give rise to a claim under the ADA." *Chapman II*, 779 F.3d at 1008 (quotations and citation omitted). In *Chapman v. Pier 1 Imports (U.S.) Inc. (Chapman II)*, 779 F.3d 1001 (9th Cir. 2015), the wheelchair-bound plaintiff argued that the defendant retail store's placement of merchandise and boxes in its aisles that blocked his access violated the ADA. The defendant responded that the barriers were only temporary because customers placed them in the aisle and staff regularly removed them. The Ninth Circuit concluded that the barriers were not temporary and isolated because the Plaintiff encountered merchandise blocking the aisle on at least eleven trips to the store and noted that "removing one obstructing object does not assure accessible aisles where it is likely

that soon thereafter another item will be moved and create a blockage." *Id.* at 1008.

Defendant insists that the obstructed path to the cashier's counter that Plaintiff encountered was such an "isolated or temporary interruption" in access unlike the blocked aisles in *Chapman II*. Not so. The merchandise display was located in the center of the store, narrowing the path of travel, when Plaintiff visited the store on January 17, 2015 and on the two dates later that spring when Plaintiff's private investigator visited the store, and it is undisputed that when there are customers in the store the displays make the path of travel too narrow. Aside from evidence that they were removed sometime thereafter, the record is silent as to whether or how often Starbucks employees moved the merchandise displays around. Defendant maintains that the merchandise displays are freestanding and are "constantly being pushed out of position by customers throughout the day[,]" (Dkt. No. 69 at 13), but they cite no evidence to support that proposition and the Court has found none in the record. Nor has Defendant argued, let alone adduced any evidence, that when customers move the displays "out of position" the path of travel becomes accessible—*i.e.*, that the barrier is removed. And if the Court accepts as true that customers moved the displays around, the record reflects that Starbucks employees returned merchandise displays to their original positions during their 8 minute sweeps, and when the merchandise displays were "in position" the path was too narrow when customers were present. Thus, even drawing all inferences in Defendant's favor, a reasonable trier of fact could not find that the merchandise displays were only temporary barriers. Thus, the access to the cashier counter is not the type of isolated and temporary access barrier that falls outside the protective reach of the ADA.

Accordingly, the Court will grant summary judgment in Plaintiff's favor on this claim.

b. Access to the Men's Restroom

█ Next, both parties seek summary judgment regarding Plaintiff's claim that Starbucks did not provide a clear path of access to the men's restroom in violation of the ADAAG's requirement that all walking surfaces have a clear path at least 36 inches wide. (Dkt. No. 37 ¶ 10(b); Dkt. No. 64 at 17.) 2010 ADAAG § 403.5.1.

Plaintiff relies on his testimony that the space between the pick-up counter and the table and chairs adjacent to it was less than 36 inches across and, thus, not wide enough for him to get through so he had to ask another patron to move his chair (Dkt. No. 66–2 at 14–15; Dkt. No. 64–1 ¶ 7); his private investigator's statement that the space between the pick-up counter and the table and chairs was less than 30 inches wide (Dkt. No. 64–5 ¶ 8; Dkt. No. 64–6 at 14, 16–17, 19, 21); and his expert's opinion that, reviewing the photographs the investigator took, the path of travel was 30 inches or less when the area was empty and as little as 10 inches wide when other customers were standing nearby. (Dkt. No. 64–3 ¶ 23.)

Defendant, for its part, relies on Mr. Blackseth's statement that the store has no less than 36 inches of clearance space for the path of travel to the restrooms. (*See* Dkt. No. 67 ¶ 9(D).) But again, this testimony came after the table closest to the counter had been removed. (*See* Dkt. No. 64–10 at 8.) Defendant also relies on Ms. Austin's declaration, in which she avers that as of February 2017 the store has no less than 36 inches of clearance space for the path of travel to the men's restroom. (Dkt. No. 69–2 ¶ 6(b).) Their testimony does not create a genuine dispute as to whether the path of travel was less than 36 inches at the time of Plaintiff's visit;

drawing all inferences in Defendant's favor, there is no triable issue that the path was less than 36 inches wide in violation of the ADAAG before the table was removed.

As for whether the access barrier remains, there is no dispute that the table closest to the pick-up counter—the one that had customers whose chairs blocked Plaintiff's path to the bathroom—has been removed. Blackseth's and Austin's testimony establishes that the counter is not obstructed when there is no table closest to the counter. Blackseth concedes that customers move all freestanding furniture around all day (Dkt. No. 64–10 at 39), which could include tables, but there is no specific testimony that customers have moved tables or that they specifically move the high-top tables near the counter on the path to the men's restroom. Nor is there testimony that any Starbucks employee has ever moved the table back to the location adjacent to the counter where it was when the customers moved the chairs around blocking Plaintiff's access. But the record reflects that Starbucks has no policy in place to prevent its employees from returning the table to that location, nor any evidence as to how staff decides where to place freestanding furniture. That, combined with the absence of any policy preventing customers from moving chairs around to other tables in a manner that might block the path of travel, leads to only one reasonable inference: that the barrier could reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693. Thus, Defendant has not established that the access to the men's restroom has been removed or remediated such that Plaintiff's claim is moot.

Once again Defendant argues that summary judgment for Plaintiff is improper because the blocked access to the bathroom was only a temporary barrier, non-architectural barrier because it was caused by misplaced furniture. As for the temporary nature of the blockage, Defendant relies chiefly on *Kirola v. City and County of San Francisco*, 74 F.Supp.3d 1187 (N.D. Cal. 2014). There, the plaintiff alleged—among other claims—that she was denied full and equal access to the city's library system due to the placement of stools in library aisles. *Id.* In the context of discussing her standing to sue and serve as class representative, the court concluded the plaintiff lacked standing because the defendant's staff removed the stools daily so the obstruction was only temporary; she never alleged that misplaced stools in the aisle interfered with her access to library services; and the stools were places in the aisles by other library patrons not defendant's staff. *Id.* at 1241–42. *Kirola* does not help Defendant.

*Kirola* cited *Sharp v. Islands Restaurant–Carlsbad*, 900 F.Supp.2d 1114, 1126–27 (S.D. Cal. 2012) for the proposition that "the ADA applies to architectural barriers, not temporary or removable obstructions." *Id.* at 1241 (citation omitted). The *Sharp* court, in turn, cited the district court's decision in *Chapman v. Pier 1 Imports*, No. CIV. S-04-1339 LKK CMK, 2006 WL 1686511, at *10 (E.D. Cal. 2006), for its conclusion that the ADA did not apply to a claim that the path of travel to the restroom was blocked by chairs. That decision, however, was vacated and remanded by the Ninth Circuit. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011). In *Chapman II*, the Ninth Circuit noted that "the presence of items in aisles is not 'temporary' for the purposes of § 36.211(b) just because the obstructing items in the aisles were placed there by customers and would have been moved on request or eventually." *Chapman II*, 779 F.3d at 1008. Instead, the court framed the question as whether the objects block access paths frequently—that is, whether the

barrier is recurring—and concluded that the repeated instances of merchandise and other objects obstructing the aisles was not temporary but rather recurring, as the plaintiff experienced the blocked aisles on several occasions and some of the obstructions were due to "affirmative actions of [the defendant] and its employees"—*i.e.*, even staff left objects in the aisle. *Id.* at 1009. Defendant seeks to distinguish *Chapman II* on the grounds that here there is no evidence that Starbucks employees placed the furniture in the path of bathroom access. But the evidence reflects that Starbucks employees regularly permitted customers to do so and did not move the furniture back to its original placement until those customers were finished. Put simply, a defendant cannot skirt the ADA by permitting its customers to impede disabled access. At oral argument, Defendant insisted that there is no regulation that requires employees to move furniture. To be sure, there is no ADAAG guideline or regulation that states as much. But there is a regulation that requires Starbucks to maintain a 36-inch pathway. Defendant has not identified any regulation that exempts places of public accommodation from this requirement based on other customers' preferences. And, as discussed above, the 8- to 10-minute sweeps do not establish that Starbucks has a policy of requiring and maintaining a 36-inch pathway.

In short, there is no triable issue as to whether customers' placement of furniture blocked Plaintiff's access to the men's restroom: it did. As discussed above, because there is no evidence that there is a store policy in place that prevents Starbucks employees from repositioning the table back to the offending location—and, if they

do so, from preventing customers from adding additional chairs to the table that blocks the path of travel—even drawing all inferences in Defendant's favor, there is no genuine dispute that the violation can reasonably be expected to recur. Accordingly, the Court will grant Plaintiff's motion for summary judgment on this issue.

### c. Additional Barriers Alleged in the FAC

As long as Plaintiff experienced some access barriers, he has standing to sue for injunctive relief for other barriers related to his disability that he did not encounter. *See Chapman I*, 631 F.3d at 944. Both parties seek summary judgment on 13 other barriers alleged in the FAC. The Court addresses each in turn.

#### i. *Entry/Exit Door—Threshold*

█ Both parties seek summary adjudication regarding whether the height of the threshold of the Starbucks's front door violates the 2010 ADAAG, which requires that door thresholds not exceed 1/2 inch in height. (Dkt. No. 37 ¶ 11(a); Dkt. No. 64 at 17–18.) *See* ADAAG § 404.2.5. Plaintiff relies on Mr. Bluhm's report, which states that the threshold is 3/4 inch high—1/2 inch out of compliance. (*See* Dkt. No. 64–3 ¶ 6; ADAAG § 404.2.5.) Plaintiff also notes that in his expert report and at his deposition, defense expert Mr. Blackseth concurred that the threshold was over the 1/2-inch height requirement. (Dkt. No. 64–10 at 12–13, 31.)

There is a genuine dispute as to whether the threshold is the required height because Ms. Austin states that, as of February 2, 2017, the "metal door threshold is no more than 1/2[ inch] beveled." [10] (Dkt. No. 65–2 ¶ 6(a).) One way to reconcile the evi-

---

10. While this declaration was submitted in support of Defendant's summary judgment motion the Court is required to consider evidence Defendant cites from its own summary judgment motion to determine whether there

is a genuine issue of fact that defeats Plaintiff's motion. *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, (9th Cir. 2001).

dence is to conclude that Starbucks remedied the noncompliance. But as explained above in connection with the sham affidavit discussion of the Blackseth Declaration, Starbucks does not offer any evidence that it took any steps to remedy its alleged noncompliance. As Plaintiff's evidence is that the threshold is too high, and Defendant's evidence is that it is just right, another reasonable inference is that a factual dispute remains about the door-threshold height, defeating both parties' motions for summary judgment on this alleged barrier.

### ii. Entry/Exit Door—Closing Speed

■■ The parties next seek summary judgment regarding whether the Starbucks's front door is adjusted to the required closing period—that is, whether the front door violates 2010 ADAAG § 404.2.8 which requires that all doors take a minimum of five seconds to close from a 90-degrees open position to 12 degrees. (Dkt. No. 37 ¶ 11(b); see also Dkt. No. 64 at 18.) Plaintiff relies on Mr. Bluhm's report, which states that the door-closing speed was faster than 5 seconds (Dkt. No. 64-3 ¶ 7); and Mr. Blackseth's report, which concurred, noting that the door closed in only three seconds and that "Starbucks will adjust and maintain door operating pressure to" compliance (Dkt. No. 64-10 at 32); and his deposition testimony that the door closed too quickly and he recommended that the store fix it (id. at 14).

In response, Defendant cites Ms. Austin's declaration, in which she avers that the doors "close in no less than five seconds when opened at 90 degrees." [11] (Dkt. No. 65-2 ¶ 6(b).) Based on the conflict between Ms. Austin's testimony and Mr. Bluhm's report, there is a genuine dispute of fact regarding whether the door pres-

sure complies with the 2010 ADAAG, so the Court therefore denies both parties' bids for summary judgment.

### iii. Access to Interior Designated Accessible Seating

■■ Next, the parties seek summary adjudication regarding whether the "arrangement of the interior designated accessible seating space ... offer[s] an equivalent experience compared to the non-accessible seating spaces." (Dkt. No. 37 ¶ 11(d); see also Dkt. No. 64 at 18.) The 2010 ADAAG require clear floor of ground space in front of a designated accessible table to be 30 inches by 38 inches and that a clear path of at least 36 inches be provided. 2010 ADAAG §§ 902.2, 305.3, 403.5.1.

Plaintiff relies on Mr. Bluhm's opinion that the tables and chairs throughout the Starbucks are arranged in a way that leaves less than a 36 inch-wide clear path to the accessible table, and that the table itself lacks the 30 inch by 38 inch clear space adjacent to the table due to the placement of other furniture. (Dkt. No. 64-3 ¶ 9; Dkt. No. 64-4 at 9–14.) Plaintiff also cites Mr. Ferris's observations that the path of travel to the accessible table was less than 36 inches and that the table had only one side open for seating, as it was blocked on two sides by the window and newspaper racks and only one side remaining was accessible to—that is, wide enough for—individuals in wheelchairs. (Dkt. No. 64-5.) At his deposition, Mr. Blackseth confirmed that he agreed the counter was out of compliance and recommended that Starbucks bring it into compliance. (Dkt. No. 64-10 at 17.)

Defendant, for its part, cites Mr. Blackseth's deposition testimony that there were sufficient accessible areas in the Star-

---

11. Defendant also relied on a paragraph of Mr. Blackseth's declaration that the Court has

excluded. See supra Section I.A.B.1.

bucks.[12] (Dkt. No. 69 at 20; Dkt. No. 66–1 at 3–4.) Defendant also cites Mr. Blackseth's deposition testimony, in which he describes the layout of the store—including the accessible tables and their locations—and opines that abled and disabled customers have the same experience at the Starbucks based on their seating options. (Dkt. No. 69 at 23; Dkt. No. 69–5 at 3–4.) This testimony creates a genuine dispute about whether the arrangement of the interior designated accessible tables provide an equivalent experience to disabled customers. The Court therefore denies Plaintiff's request for summary judgment on this issue.

#### iv. Lack of Accessible Counter Seating

██ The parties next seek summary judgment on Plaintiff's claim that the "elevated counter seating lacks a properly configured accessible seating space." (Dkt. No. 37 ¶ 11(e); see also Dkt. No. 64 at 18.) The 2010 ADAAG requires that the tops of all dining areas be at least 28 inches wide and no more than 34 inches above the ground and that the clear space in front of the dining area be at least 30 inches by 48 inches. 2010 ADAAG §§ 902.2, 902.3, 305.3.

In support of his motion, Plaintiff relies on Mr. Bluhm's expert opinion that the elevated counter seating is 45 inches high and there is no lowered portion or adequate clear space in front of such lowered portion. (Dkt. No. 64–3 ¶ 10; Dkt. No 64–4 at 16–17.) Plaintiff also cites Mr. Blackseth's expert report, in which he appears to concede that the tall counter is out of compliance, noting that the "counter seating is 45' high with no lowered area provided" and states that Starbucks "will provide a lowered area" that complies with the required measurements. (Dkt. No. 64–10 at 32.)

In its opposition to Plaintiff's motion and in its own bid for summary judgment, Defendant does not contend that it has remedied the elevated counter and provided a lowered area in compliance with the ADAAG. Instead, citing the Austin Declaration, Defendant contends only that the chairs have been removed, so "there is no elevated counter 'seating' area" so "no lowered counter portion is required." [13] (Dkt. No. 69 at 21; Dkt. No. 65–2 ¶ 6(c).) On the one hand, the 2010 ADAAG refers to "dining areas" not "seating areas." See 2010 ADAAG Advisory § 902.1 General ("Dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths."). There are exceptions written into this section of the ADAAG, but none that says the requirements do not apply to "dining surfaces" that do not have chairs. Thus, the Court is not convinced that the absence of chairs means the counter is no longer a dining area. But there is no evidence about whether customers use, or do not use, the chair-less countertop for that purpose. Thus, whether the elevated counter is a dining area—such that it violates the ADAAG to not provide a lowered, accessible counter as well—is a question of fact. Accordingly, neither party is entitled to summary judgment on this issue.

#### v. Self-Service Counter

██ Next, the parties seek summary judgment on Plaintiff's claim that the "self-service items located on the order pick-up counter are located beyond the reach requirements" in violation of the 2010 ADAAG. (Dkt. No. 37 ¶ 11(g); Dkt. No. 64 at 19.) The 2010 ADAAG provides that where a forward reach is unobstructed, the

12. Defendant also relied on a paragraph of Mr. Blackseth's declaration that the Court has excluded. See supra Section I.A.B.1.

13. Defendant also cites a section of the Blackseth Declaration that the Court has excluded. See supra Section I.A.B.1.

high forward reach shall not exceed 48 inches. 2010 ADAAG § 308.3.1. In contrast, where a clear floor of ground space permits a parallel approach to an element—that is, when a person approaches a counter with his wheelchair parallel to it—and the high side reach is over an obstruction, the depth of the obstruction shall be no more than 24 inches. 2010 ADAAG § 308.3.2.

Plaintiff relies on Mr. Bluhm's opinion, which states that the counter itself is an obstruction and the straws and stirring sticks were located a 26- to 29-inch side reach away in violation of the ADAAG reach requirements. (Dkt. No. 64–3 ¶ 12; Dkt. No. 64–4 at 22–24.) Defendant cites the Blackseth Declaration, in which he avers that the counter itself is 33½ inches high, has a small upper shelf where the self-service items are located that is 40 inches high, and the reach range to the back of the cabinet where the items are is 19 inches and no items are more than 48 inches high, which is the applicable reach range for unobstructed reaches. (Dkt. No. 69 at 21; Dkt. No. 67 ¶ 9(J).) He stated that same in his expert report. (Dkt. No. 64–10 at 34.) Defendant also cites deposition testimony in which Mr. Blackseth opines that the ADAAG rules do not apply to materials for sale—a statement that the Court disregards because it is an improper legal conclusion—and his testimony that he recommended that Starbucks bring the straws and stirrers within reach but did not think it was a violation of any standard. (Dkt. No. 66–1 at 5–7.)

It is not clear from the parties' submissions whether they are talking about the same element or whether, perhaps, Starbucks moved the self-service items from the pick-up counter to another location. The particular location dictates which ADAAG section applies, since the counter involves a side reach and the cabinet a direct front reach. It appears undisputed that there was a barrier when the straws were located at the counter, and perhaps they have since been moved, but there is no evidence in the record to that effect. Thus, there is a factual dispute about which ADAAG section applies, so the Court cannot grant summary judgment to either party on this element.

The Court rejects Defendant's argument that the ADA reach regulations "do[ ] not cover condiments or merchandise on shelves[.]" (Dkt. No. 69 at 21.) Defendant does not cite a particular section of the ADAAG that holds as much, and in any event, Defendant is wrong. Section 225.2.2 states that self-service shelving shall not be required to comply with 308—the reach requirements—and notes that self-service "shelves include, but are not limited to, library, store, or post office shelves." 2010 ADAAG Advisory § 225.2.2. But another section specifically provides that self-services shelves and dispensing devices for tableware, dishware, condiments, food and beverages *shall* comply with 308. *Id.* § 904.5.1. Canons of construction provide that specific provisions targeting a particular issue apply instead of provisions more generally covering an issue. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S.Ct. 2065, 2071, 182 L.Ed.2d 967 (2012) ("The general/specific canons explains that the general language of [one clause], although broad enough to include it, will not be held to apply to a matter specifically dealt with in [a second clause].") (internal quotation marks and citation omitted). Accordingly, the Court concludes that the reach regulations apply to the condiment area even if Defendant has moved it to a shelf. But, because a factual dispute remains as to where the condiments are located—and thus, which reach regulation applies—neither party is not entitled to summary judgment on this issue.

### vi. *Floor Mats*

 The parties also seek summary judgment on Plaintiff's claim that the "floor mats within public areas of the facility are unsecured and improperly configured." (Dkt. No. 37 ¶ 11(h); Dkt. No. 64 at 19.) The regulations require that carpet or carpet tiles be securely attached to the floor and shall have a firm cushion, pad, or backing or no cushion or pad. 2010 ADAAG § 302.2. The advisory note to this section clarifies that it includes carpets and "permanently affixed mats." *Id.* at § Advisory 302.2.

In support of his position, Plaintiff cites Mr. Bluhm's opinion that he observed that the floor mat en route to the bathroom was unsecured. (Dkt. No. 64–3 ¶ 13; Dkt. No. 64–4 at 26.) Mr. Bluhm does not describe the mats themselves, but the mats in the photographs attached to his declaration appear to be rubber mats on a tiled floor, rather than carpeting. Defendant cites Mr. Blackseth's statement that the "floor mats are properly installed and secured and comply with all access regulations." (Dkt. No. 67 ¶ 9(K).) Defendant also cites Mr. Blackseth's deposition testimony, in which he states that the mat at issue was actually a "walk off mat" and no action was required because the mat did not present any significant issue. (Dkt. No. 66–1 at 8–9.) Similarly, Mr. Blackseth does not describe what the mats are made of, but he calls them "walk off mats" and they appear, in photos, to be rubber mats on a tiled floor.

The Court cannot conclude that the floor mats Plaintiff identified violate the ADAAG. The ADAAG specifically refers to carpet and permanent mats, not moveable rubber floor mats. *See* 2010 ADAAG § 302.2; *see also Doran v. 7–Eleven*, No.

SACV 04-1125 JVS (ANX), 2008 WL 6259323, at *4 (C.D. Cal. Dec. 22, 2008) (concluding that the ADAAG's secure-carpeting provision "has no application to 'floor mats'[ ]") (citations omitted); *Wilson v. Norbreck, LLC*, No. CIVS040690DFLJFM, 2005 WL 3439714, at *4–5 (E.D. Cal. Dec. 14, 2005) (noting that the ADAAG section about mats deals with carpeting and thus has no application to "floor mats"); *White v. Divine Invs., Inc.*, No. Civ.S-04-0206 FCD/DA, 2005 WL 2491543, at *6 (E.D. Cal. Oct. 7, 2005) (same) (citations omitted). In *White*, the court granted summary judgment for the defendant on the plaintiff's claim that the floor mats were not attached, noting that "[t]he mats at issue, depicted in photographs in plaintiff's expert's report, are clearly not 'carpet' of any sort, but are mats placed on the linoleum floor and thus … not covered by the ADAAG. Moreover, plaintiff has not provided any evidence that said mats are unstable or loose or that they provide a tripping hazard." [14] 2005 WL 2491543, at *6. So too here. The mats in the photographs appear to be rubber mats on a tiled floor. Mr. Bluhm's declaration states only that they are not secured to the floor, but otherwise provides no information about whether they are unstable or loose or would present a hazard to a disabled person in a wheelchair. The Court therefore denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment on this issue.

### vii. *Men's Restroom Door Pressure & Closing Speed*

 The parties seek summary adjudication regarding Plaintiff's claim that the "men's restroom door is not adjusted to

14. *White* discussed an earlier version of the ADAAG, and therefore cited a different section number, but the substance is the same.

the required operating pressure and closing period." (Dkt. No. 37 ¶ 11(i); Dkt. No. 64 at 20.) The 2010 ADAAG provides that pressure on interior doors shall not exceed 9 pounds and all doors take a minimum of 5 seconds to close from a 90-degrees open position to 12 degrees. 2010 ADAAG §§ 404.2.8, 404.2.9.

To support his contention that the men's restroom door violates these provisions, Plaintiff cites Mr. Bluhm's declaration where he opines that the bathroom door pressure measured approximately 10 pounds and Mr. Blackseth conceded that the pressure was too high. (Dkt. No. 64–3 ¶ 14; Dkt. No. 64–10 at 36.) As for speed, Plaintiff cites Mr. Bluhm's statement that the door closing speed was faster than the 5-second requirement. (Dkt. No. 64–3 ¶ 15.)

Defendant cites Ms. Austin's statement that the restroom door has an operating pressure of no more than five pounds and closes is no less than five seconds when opened 90 degrees.[15] (Dkt. No. 69–2 ¶ 6(e)). This testimony creates a genuine dispute as to whether the restroom door complies with the ADAAG, so neither party is not entitled to summary judgment.

### viii. *Men's Restroom Trash Can*

■ Both parties seek summary judgment on Plaintiff's claim that the "waste receptacle within the men's restroom obstructs the required maneuvering clearance at the interior of the door" in violation of the ADAAG requirement of a minimum clearance of 60 inches on the inside "pull side" of the door. (Dkt. No. 37 ¶ 11(j); Dkt. No. 64 at 20.) 2010 ADAAG § 404.2.4.1.

In support of his position, Plaintiff cites Mr. Bluhm's opinion that when he visited

the store and measured the distance from the doorway to the trash can, there was only 48 inches of clearance space. (Dkt. No. 64–3 ¶ 16.) Plaintiff also cites Mr. Blackseth's expert opinion as evidence that he concurred that there was a violation because Starbucks moved the trashcan (Dkt. No. 64–10 at 36), and his deposition testimony that the trash can gets moved around a lot and "is really not a barrier." (Dkt. No. 64–10 at 20.) Defendant cites Mr. Blackseth's declaration, noting that he averred that the restroom has a clear floor space of 60 inches wide by 51 inches wide and is not obstructed by the trash can (Dkt. No. 67 ¶ 9(M))—purportedly because it had been moved. It is not clear whether the trashcan remains where it was pictured for the photograph, and the parties did not address or offer evidence about how frequently it is moved in a way that might block the entrance. Thus, a genuine dispute remains as to whether there is sufficient clear space in the bathroom, so neither party is not entitled to summary judgment on this issue.

### ix. *Men's Restroom Plumbing Insulation*

■ The parties seek summary adjudication on Plaintiff's claim that the "plumbing beneath the men's restroom lavatory is not properly insulated or otherwise configured to protect against contact" in violation of rules that provide that all water supply and drain pipes under lavatories and sinks "shall be insulated or otherwise configured to protect against contact." (Dkt. No. 37 ¶ 11(*l*); Dkt. No. 64 at 20.) 2010 ADAAG § 606.5.

Plaintiff cites Mr. Bluhm's declaration that the water line under the sink is "not insulated at all." (Dkt. No. 64–3 ¶ 17.) The

---

**15.** Defendant also relies on a paragraph of the Blackseth Declaration that the Court has

excluded. *See supra* Section I.A.B.1.

photograph attached to his declaration shows that the main water line down from the sink into the wall, which juts several inches out from the wall, was almost entirely insulated, but the separate, smaller hot and cold lines from the wall up to the sink, which are more flush to the wall, are not insulated. (Dkt. No. 64–4 at 33.) In his expert report, Mr. Blackseth contends that the back pipes did not need to be insulated and are compliant "as they cannot be touched in any normal use." (Dkt. No. 64–10 at 37.) Defendant relies instead on Mr. Blackseth's declaration, in which he avers that the plumbing is properly insulated in accordance with all access regulation. (Dkt. No. 67 ¶ 9(N).)

Whether the insulation complies with the regulations comes down to a battle of the experts. Neither party has submitted any evidence about how often or whether individuals in wheelchairs come into contact with pipes like the ones at issue here. Thus, the Court cannot conclude as a matter of law that the back pipes needed to be insulated to protect against contact. As this fact question remains, the Court denies both parties' bids for summary judgment on the insulation issue.

x. *Men's Restroom Toilet Position*

■ The parties next seek summary judgment on Plaintiff's claim that the "men's restroom toilet is positioned too far away from the adjacent side wall" to comply with ADA regulations, which provide that the centerline of the toilet must be between 16 and 18 inches from the side wall. (Dkt. No. 37 ¶ 11(m); Dkt. No. 64 at 20–21.) 2010 ADAAG § 604.2.

In support of this claim, Plaintiff relies on Mr. Bluhm's opinion that the centerline of the toilet is 18.5 to 19 inches from the

wall. (Dkt. No. 64–3 ¶ 18; Dkt. No. 64–4 at 35.)

Defendant cites Ms. Austin's statement that the centerline of the men's restroom toilet is no less than 17 inches and no more than 18 inches from the wall.[16] (Dkt. No. 69–2 ¶ 6(h).) Based on Mr. Blackseth's expert report, it appears that Starbucks may have moved the toilet, as he concluded that the toilet was 19 inches from the wall and noted that Starbucks "will modify to provide a toilet that is 17'–18' on center from the adjacent wall." (Dkt. No. 64–10 at 37.) But there is no evidence about when any changes were made. If there were, the Court would likely conclude that this claim is moot. Indeed, courts routinely conclude that rendering bathrooms accessible through structural modifications moots ADA claims. See *Ramirez v. Golden Creme Donuts*, No. C 12–05656 LB, 2013 WL 6056660, at *2 (N.D. Cal. Nov. 15, 2013) (citations omitted); see, e.g., *Eiden v. Home Depot USA, Inc.*, No. CIVS04–977 LKK/CMK, 2006 WL 1490418, at *9 (E.D. Cal. May 26, 2006) (defendant mooted ADA claims by installing ADA-compliant bathroom stall door handle, repositioning toilet dispenser, and placing appropriate signage); *Grove v. De La Cruz*, 407 F.Supp.2d 1126, 1130–31 (C.D. Cal. 2005) (installing grab rails in the bathroom moots ADA claims). But Defendant has not submitted any such evidence. Accordingly, a triable issue remains as to whether the centerline of the toilet is more than 18 inches from the wall, so Plaintiff is not entitled to summary judgment on this issue.

xi. *Men's Restroom Mirror Position*

■ Plaintiff also seeks summary judgment that the bottom edge of the reflecting surface of the mirror in the men's

---

16. Defendant also relies on a paragraph of the Blackseth Declaration that the Court has

excluded. See supra Section I.A.B.1.

restroom is unlawfully positioned more than 40 inches above the ground. (Dkt. No. 37 ¶ 11(n); Dkt. No. 64 at 21.) *See* 2010 ADAAG § 603.3.

To establish that the mirror is too high, Plaintiff relies on Mr. Bluhm's declaration, which states that the distance from the floor to the reflecting surface of the mirror above the sink was 43 inches, and the photographs he took that show the same. (Dkt. No. 64–3 ¶ 18; *see* Dkt. No. 64–4 at 37.) In Mr. Blackseth's expert report, he concluded that the mirror was too high. (Dkt. No. 64–10 at 38.) To show that no barrier exists, Defendant cites Ms. Austin's statement that the bottom of the mirror's reflective portion is no more than 40 inches high.[17] (Dkt. No. 69–2 ¶ 6(i).) Thus, a triable issue remains issue as to mirror height, so summary judgment is not warranted.

### xii. *Men's Restroom Position of Toilet Paper Dispenser*

 The same is true of the parties' requests for summary judgment on Plaintiff's claim that the men's restroom toilet paper dispenser is too close to the toilet. (Dkt. No. 37 ¶ 11(p); Dkt. No. 64 at 21.) Regulations require that toilet paper dispensers be located 7 to 9 inches in front of the toilet as measured from the centerline of the dispenser. 2010 ADAAG § 604.7.

In support of his claim that the toilet paper dispenser violates the rule, Plaintiff cites Mr. Bluhm's declaration that it is only 3 inches away, and his photographs showing as much. (Dkt. No. 64–3 ¶ 5; Dkt. No. 64–4 at 39.) In his expert report, Mr. Blackseth opined that the dispenser was too close to the toilet. (Dkt. No. 64–10 at 38.) Defendant cites Ms. Austin's statement that the bottom of the mirror's reflective portion is no more than 40 inches high.[18] (Dkt. No. 69–2 ¶ 6(i).) Thus, there is a triable issue as to whether the location of the toilet paper dispenser complies with regulations, so neither party is entitled to summary judgment.

### xiii. *Equal Seating Options*

 Lastly, the parties seek summary adjudication on Plaintiff's claim that Starbucks has failed to provide equal seating options for the disabled as it provides for the able bodied.[19] (*See* Dkt. No. 64 at 21.) The ADA prohibits public accommodations from providing an experience that is not "functionally equivalent" to that afforded to non-disabled patrons. *See Kalani v. Starbucks Corp.*, 117 F.Supp.3d 1078, 1087 (N.D. Cal. 2015) (citation omitted). To determine whether a defendant provides disabled patrons with an opportunity to participate in or benefit from its goods or services that is functionally equivalent to those afforded to non-disabled patrons, courts consider how non-disabled patrons use the store. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (citing *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005)). This includes the availability of types of seating. *See, e.g., Baughman*, 685 F.3d at 1135 (citation omitted); *see also Kalani*, 117 F.Supp.3d at 1087 (parties stipulated that Starbucks's services included "seating," the cafe environment, and a "full and rewarding coffeehouse experience[ ]") (record citation omitted).

---

17. Defendant also relies on a paragraph of the Blackseth Declaration that the Court has excluded. *See supra* Section I.A.B.1.

18. Defendant also relies on a paragraph of the Blackseth Declaration that the Court has excluded. *See supra* Section I.A.B.1.

19. While this was not one of the listed "elements" in the FAC, Defendant does not contend that this issue is somehow improperly in the case. (*See* Dkt. No. 69 at 23–24.)

For example, the Ninth Circuit concluded that a physical barrier that prevented disabled customers from fully participating in the selection and preparation of their order at the food counter was part of the customer experience that the store provided. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1173–75 (9th Cir. 2010). In *Kalani*, a court in this district concluded that by failing to provide any accessible seating that faces the interior of the store, the defendant—Starbucks—failed to afford disabled customers an equal experience to those provided to non-disabled customers because part of its services included a "full and rewarded coffeehouse experience." 117 F.Supp.3d at 1087–88 ("Defendant's decision to orient the interior accessible tables such that non-disabled patrons are unable to fully participate in the Starbucks experience is a disadvantage that non-disabled customers do not suffer.") (internal quotation marks, alterations, and citation omitted).

██ Here, Plaintiff highlights a number of seating options that Starbucks provides non-disabled customers but are unavailable to disabled customers. For example, the accessible tables—both inside and outside of the store—are pushed up against a wall, leaving only one accessible side available for a disabled person, and one side of the table is blocked by a news stand. (Dkt. No. 64–3 ¶ 8; Dkt. No. 64–4 at 4–6; Dkt. No. 64–5 ¶ 9.) Thus, the only view from the interior accessible table is outside, not into the store, and a disabled individual seated at the table can only sit with one other person. (*See id.*) In contrast, the tables for non-disabled customers have seating facing in all directions, including seats that let them view the interior of the store. Unlike disabled customers, non-disabled customers can also enjoy their drinks at the drink counter—though it is disputed whether

seats are still available—and in an area of the store with comfortable chairs. (*See* Dkt. No. 64–3 ¶ 8.)

In response, Defendant cites Mr. Blackseth's testimony that disabled customers have the same experience as nondisabled customers, as there are "two functional areas and the adequate number of accessible tables"—*i.e.*, inside and outside of the store. (Dkt. No. 69–5 at 3-4.) This is not particularly strong evidence, but it is enough to create a triable issue about the experience Defendant provides to disabled customers. In fact, several fact issues remain. For example, unlike *Kalani*, where the parties stipulated that the "experience" was part of its services, 117 F.Supp.3d at 1079, there is a triable issue here about what those services are; the only evidence in the record is a printout from Starbucks's webpage that states that Starbucks "coffee brings people together" and that the stores are "vibrant and inviting:" because of their "philosophy of community[.]" (Dkt. No. 64–10 at 56–57.) This is not enough to conclude as a matter of law that the in-store people-watching experience is part of Starbucks's services for the purposes of ADA discrimination. The *Kalani* court also based its decision granting summary judgment to the plaintiff based on the plaintiff's testimony that he was a social individual who enjoyed sitting at tables and interacting with others. *Id.* at 1089–90. There is no such testimony here. However, Defendant's other argument is disingenuous: Defendant notes that the tables are lightweight and thus suggests that if a disabled customer does not like the table arrangement, he can move it to better suit his needs. (Dkt. No. 69 at 24.) But the ADA places the onus on the store to provide an equivalent experience and services, not on the disabled customer to make it so.

In any event, because fact issues remain, the Court denies Plaintiff's request for

summary judgment on Starbucks's failure to provide an equal or equivalent experience to non-disabled customers.

\* \* \*

As there is no factual dispute that the barriers Plaintiff personally experienced existed and are likely to recur, and Defendant did not contend that curing the barriers is not readily achievable, the Court grants summary judgment in Plaintiff's favor as to the cashier counter and men's restroom access claims. Plaintiff is therefore entitled to injunctive relief on those claims, which "shall include an order to alter facilities to make such facilities readily accessible and useable by individuals with disabilities" to the extent required by the ADA. 42 U.S.C. § 12188(a). The Court grants summary judgment in Defendant's favor on the floor mats claim. Factual disputes preclude summary judgment as to the remaining barriers.

## B. State Law Claims

"A violation of the ADA is, by statutory definition, a violation of both the Unruh [Civil Rights] Act and the ADA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012) (citation omitted); Cal. Civ. Code §§ 51(f), 54(c); *see also Californians for Disability Rights v. Mervyn's LLC*, 165 Cal.App.4th 571, 586, 81 Cal. Rptr.3d 144 (2008) ("A violation of the ADA also constitutes a violation of both the Unruh Act and the DPA."). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). As a result, the parties' arguments for summary judgment on the state law claims rise and fall with the ADA claims.

Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims based on its argument that Plaintiff lacks standing to sue under the ADA. (Dkt. No. 65-1 at 26.) This argument is a non-starter, as the Court concludes that Plaintiff has standing to bring the ADA claims. For the same reasons, Plaintiff has standing to sue under the Unruh Act.

Because the Court grants summary judgment for Plaintiff on the cashier counter and men's restroom access claims, the Court enters judgment in Plaintiff's favor on the same claims under state law. The Unruh Act imposes damages "for each and every offense ..., up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto...." Cal. Civ. Code § 52(a). A plaintiff can recover statutory damages for an Unruh Acts claim "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." *Id.* § 55.56(a). A denial of full and equal access occurs where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." *Id.* § 55.56(b). Plaintiff meets these elements. There is no genuine dispute that Plaintiff personally suffered difficulty accessing the cashier's counter and men's bathroom. He also avers that having to ask other Starbucks customers to move to permit him to pass caused him embarrassment. This is enough to establish an entitlement to statutory damages under the Unruh Act based on his visit to the Starbucks. Plaintiff seeks the minimum amount of statutory damages. Accordingly, the Court will grant Plaintiff's request for $4,000 in statutory damages.

Because the Court grants summary judgment in for Defendant on the floor mat claim under the ADA, so too will judgment be entered in Defendant's favor on the state law claim alleging the same violation. The Court denies both parties' motions for summary judgment under the Unruh Act for the remaining alleged barriers.

## CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART the parties' cross-motions for summary judgment.

As there is no factual dispute that the barriers Plaintiff personally experienced existed and are likely to recur, and Defendant did not contend that curing the barriers is not readily achievable, the Court grants summary judgment in Plaintiff's favor as to the cashier counter and men's restroom access claims under the ADA and the Unruh Act. Plaintiff is therefore entitled to injunctive relief on those claims, which "shall include an order to alter facilities to make such facilities readily accessible and useable by individuals with disabilities" to the extent required by the ADA. 42 U.S.C. § 12188(a). The Court also orders that Plaintiff be paid $4,000 in statutory damages under the Unruh Act.

The Court grants summary judgment in Defendant's favor on the floor mats claim under the ADA and the Unruh Act. Factual disputes preclude summary judgment as to the remaining barriers. The parties are directed to contact Judge LaPorte's chambers on or before April 11, 2017 regarding rescheduling the settlement conference.

This Order disposes of Docket Numbers 64 and 65.

**IT IS SO ORDERED.**